# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HERBERT B. SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN COLVIN, ) <br> ACTING COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:12-CV-2325-JAR |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Herbert B. Smith's ("Smith") application for disability insurance benefits pursuant to 42 U.S.C. § 423 and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 1382.

### I.  Background

On March 12, 2010, Smith completed his applications for disability insurance and SSI benefits. (Tr. 126-29, 133-36.) On April 23, 2010, Defendant issued a Notice of Disapproved Claims. (Tr. 69-74.) On May 18, 2010, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 75.) After a hearing, the ALJ issued a written decision on November 7, 2011, upholding the denial of benefits. (Tr. 6-25.) Smith requested a review of the ALJ's decision by the Appeals Council. (Tr. 46.) On October 31, 2012, the Appeals Council denied Smith's request for a review. (Tr. 1-5.) The decision of the ALJ thus stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Smith filed this appeal on

December 17, 2012. (ECF No. 1.) The Commissioner filed an Answer. (ECF No. 10.) Smith filed a Brief in Support of his Complaint. (ECF No. 16). The Commissioner filed a Brief in Support of the Answer. (ECF No. 21.)

## II. Decision of the ALJ

The ALJ determined that Smith met the insured status requirements of the Social Security Act through December 21, 2010. (Tr. 11.) The ALJ found that the claimant had not engaged in substantial gainful activity since April 24, 2008, the alleged onset date. (Id.) The ALJ found that Smith has the following severe impairments: pancreatitis, diabetes mellitus, major depressive disorder, and polysubstance abuse, but that no impairment or combination of impairments meets or equals in severity the requirements of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)

The ALJ found that Smith had the residual functional capacity ("RFC") to perform sedentary work (lifting and carrying ten pounds occasionally, less than ten pounds frequently; sitting for at least six hours out of eight; and standing/walking at least two hours out of eight), pursuant to 20 C.F.R. 404.1567(a) and 416.967(a), except that he can only occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 12-13.) Smith can occasionally climb stairs, ladders, ropes, and scaffolds. (Tr. 13.) Smith should avoid concentrated exposure to hazards of unprotected heights, as well as moving and dangerous machinery. (Id.) Smith retains the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Id.) He can respond appropriately to co-workers and supervisors in a task-oriented setting where contact is casual and infrequent. (Id.) He should not work in settings where there is constant/regular contact with the general public. (Id.)

The ALJ determined that Smith's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 17.)

The ALJ discerned that the impairments established in this case prevented Smith from performing his past relevant work as a cook, cashier and dishwasher. (Tr. 19.) However, considering Smith's age, education, work experience, and RFC, the ALJ held that there were jobs that existed in significant numbers in the national economy that Smith could perform. (Tr. 20.) Thus, the ALJ concluded that Smith had not been under a disability, as defined in the Social Security Act, from April 24, 2008 through the date of the decision. (Tr. 21.)

Smith appeals, contending that the ALJ erred because he failed to consider substance abuse, as required by 20 CFR §404.1535. Smith also contends that the ALJ applied an improper legal standard regarding the testimony of Christy Holloway, BSW, CSS, Community Support Worker at Adapt,[1] who suggested that it would be difficult for Smith to maintain any type of schedule. The Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

### III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

#### A. Hearing Testimony

##### 1. Smith's Testimony on September 13, 2011

Smith testified as follows. He was 44 years old. (Tr. 28.) He went to school through the 10th grade. (Tr. 28-29.) He does not have a GED. (Tr. 29.) From 1996-1998, Smith worked as a prep cook and dishwasher at Crackers. (Tr. 29.) He worked there for 11 years. (Id.) From

---

[1] Adapt provides community based, recovery oriented services for adults, adolescents and children living with mental illness. http://www.adaptusa.com/index.php

2004-2007, Smith worked at Breve Espresso as a barista and cashier. (Id.) He received unemployment benefits from when Breve Espresso closed down until 2010. (Tr. 30-31.)

Smith had a problem with alcohol. (Tr. 31.) He still consumes alcohol "every now and then." (Id.) Alcohol consumption bothers his pancreatitis. (Id.) Smith has been in an alcohol treatment programs, but they did not "stick". (Id.) He has not tried using a medication that makes a person sick if the person uses alcohol. (Id.)

Smith had a problem with cocaine. (Tr. 31.) Smith has not used cocaine in the last 6 months to a year. (Tr. 31-22.) Smith uses marijuana on and off. (Tr. 32.) It has been a few days since he used marijuana. (Id.) He has never used heroin. (Id.)

The records indicate that several people have suggested that Smith find a psychiatrist. (Tr. 32.) Smith has seen Dr. Franco Sicuro at Adapt, but no one outside of Adapt. (Id.) Smith sees a psychiatrist at Adapt once a month. (Id.) Dr. Sicuro has recommended that Smith stop using alcohol and drugs. (Tr. 32-33.)

Smith last had a bout of pancreatitis on Saturday; he had not been drinking. (Tr. 33.)

Smith has pain from pancreatitis every day. (Tr. 34.) Some days it flares up and he ends up in the hospital. (Id.) In addition to alcohol, stress and spicy or greasy foods can also cause a flare up. (Id.) There are instances in the medical record where Smith had not consumed alcohol but ended up in the hospital for flare ups; those flare ups were likely due to stress. (Tr. 34-35.) When Smith has a flare up, his pain "skyrockets" and he gets a shooting pain that causes nausea and vomiting. (Tr. 35.)

Smith has side effects from his medication, including preventing urination, constipation, and sleepwalking. (Tr. 35.) He has made phone calls he was not aware of. (Tr. 35-36.) He has had suicidal thoughts. (Tr. 36.) He has been depressed since his mother died on April 24, 2007.

(Id.) He got sick and his job closed down; he became homeless. (Id.) He now lives with his stepfather. (Id.) Prior to his job closing down, Smith missed a lot of work from pancreatitis. (Id.)

Smith feels depressed most of the time, even prior to December 2010. (Tr. 36-37). He has a lot of problems with crying spells. (Tr. 37.) He has trouble being around other people. (Id.) He has trouble sleeping. (Id.) He takes sleep aids like Lunesta. (Id.) Smith does not handle stress well. (Tr. 37-38.) Smith was admitted to Barnes hospital in March 2011 for depression. (Tr. 38.)

Smith receives services from Adapt including his psychiatrist, Dr. Sicuro, and also a caseworker, Ms. Holloway, that took Smith to his appointments and medicines. (Tr. 38.)

Smith has limitations, such as difficulty staying focused. (Tr. 38-39.) He does not drive. (Tr. 39.) He can only walk about a block and a half before his chest begins to hurt and he loses his breath. (Id.) He cannot stand for very long because it aggravates him "with the pancreas". (Id.) He can only stand ten or fifteen minutes. (Id.) He can only sit for ten or fifteen minutes before he has to get up and move around. (Tr. 39-40.) He can only lift as much as a jug of milk. (Tr. 40.) He can dress and bathe himself. (Id.) He does not visit anyone outside his home. (Id.) He is not active with any church, club or organization. (Id.) He performs chores, such as the dishes, feeding the dog, taking care of the dog, shampooing the dog, and vacuuming. (Id.) He has some difficulty vacuuming. (Tr. 40-41.)

Smith wakes up around 5, and goes to bed at 9. (Tr. 41.) He makes sure the dog goes to the bathroom, has breakfast, does dishes, collects cans in the neighborhood. (Id.) He collects cans in the neighborhood and makes money by recycling them. (Id.) He makes about $15 a week. (Id.) He does that for about 30 minutes a day. (Id.)

5

If his pancreatitis flares up, then Smith cannot do anything. (Tr. 42.) If it gets too bad, he checks himself into the hospital. (Id.)

He typically lies down 4 days a week, including prior to December 31, 2010. (Tr. 42.)

**2.    Testimony of Vocational Expert**

Vocational expert, Ms. Gonzalez, testified as follows. The hypothetical claimant is 41 at the alleged onset date, with 10 years of education and the same work experience. (Tr. 43.) The claimant can lift and carry ten pounds occasionally, less than ten pounds frequently, stand and walk for two hours out of eight, sit for six, can occasionally climb stairs and ramps, ropes, ladders and scaffolds, occasionally balance, stoop, kneel, crouch and crawl. (Id.) In addition, the hypothetical claimant should avoid concentrated exposure to the hazards of unprotected heights, as well as moving and dangerous machinery. (Id.) He can understand, remember and carry out at least simple instructions and un-detailed tasks, and can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent. (Id.) The hypothetical claimant cannot work in a setting which includes constant or regular contact with the general public. (Id.)

Given these restrictions, Ms. Gonzalez said that the claimant could not return to his past relevant work. (Tr. 43.) However, Smith could perform work as an addresser and as a sticker, both of which are sedentary and unskilled. (Tr. 43-44.)

If a claimant required frequent hospitalizations (several days a month), then such person would not be employable by most employers. (Tr. 44-45.)

**B.    Medical Records**

The ALJ summarized Smith's medical records at Tr. 14-19. Relevant medical records are discussed as part of the analysis.

6

## IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008); see also Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. Id.; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. Id.; see also 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." Goff, 421 F.3d at 790; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." Mueller v. Astrue, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

disability, however, remains with the claimant." Id.; see also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002); see also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. Krogmeier, 294 F.3d at 1022.

**V. Discussion**

Smith asserts two errors on appeal. First, Smith claims that the ALJ erred in failing to consider substance abuse as required by 20 CFR §404.1535. Second, Smith contends that the ALJ applied an improper legal standard regarding the testimony of Ms. Holloway, who maintained it would be difficult for Smith to maintain any type of schedule. In response, the

9

Commissioner argues that the ALJ had no obligation to conduct the analysis called for by 20 C.F.R. §§404.1535 and 416.935 because Smith failed to meet his burden to prove disability. In addition, the Commissioner argues that the ALJ properly discounted the opinion of Ms. Holloway.

### A. Finding of Disability/Effect of Alcohol Dependence

Smith contends that the ALJ failed to consider substance abuse as required by 20 CFR §404.1535. (ECF No. 16 at 9-11.) 20 CFR §§404.1535 and 416.935 provide that:

> (a) *General.* If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.*
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Smith states that the "ALJ was required to find Plaintiff was disabled before the ALJ could consider the effects of substance abuse on RFC, *i.e.*, whether Plaintiff would still be disabled if he stopped using drugs or alcohol." (ECF No. 16 at 10 (citing 20 CFR §404.1535)).

10

The Commissioner contends that the ALJ was not required to perform the analysis called for by 20 C.F.R. §§404.1535 and 416.935 because Smith failed to meet his burden to prove disability. See Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003)("Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied."). Smith has the burden of proving that drug and alcohol abuse was not a contributing factor material to the disability determination. Brueggemann, 348 F.3d at 693. The Commissioner contends that the statute does not apply because the ALJ was not required "to consider whether substance abuse was a contributing factor material to the disability determination." (ECF No. 21 at 13.)

"The plain text of the relevant regulation requires the ALJ first to determine whether [Smith] is disabled." Brueggemann, 348 F.3d at 694 (citing 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). Drug addiction or alcoholism is "material" if the individual would not be found disabled if alcohol or drug use were to cease. See 20 CFR §§404.1535 and 416.935.

Here, the ALJ properly found Smith was not disabled without consideration of the effects of his drug and alcohol dependency. Rather, the ALJ found that Smith was not disabled based upon the record. The ALJ stated that "[a]fter considering the evidence of the record, the undersigned finds that [Smith's] medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [Smith's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 17.)

Since the "condition precedent" of a finding of disability is not present in this case, then the ALJ was not required to perform the analysis in 20 CFR §§404.1535 and 416.935.[3]

The Court finds that the ALJ properly found Smith not disabled by analyzing his credibility and discounting his subjective pain complaints. The ALJ properly considered the Polaski factors when evaluating Smith's subjective pain complaints. Under Polaski, an ALJ must evaluate: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). These considerations must be taken into account, although the Court does not require the ALJ's decision to include a discussion of how every Polaski "factor" relates to the claimant's credibility. Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007)(citing Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.2004)).

First, the ALJ found that Smith was not disabled because his complaints were not consistent with the medical records. Smith had been diagnosed with alcoholism, pancreatitis and diabetes. (Tr. 1096.) Generally, however, after Smith had "Whipple surgery" on September 24, 2010 (Tr. 827-28),[4] his condition improved and his complaints regarding pancreatitis decreased significantly, as did his hospitalizations. On April 1, 2011, Dr. Samer Al-Kaade[5] noted that Smith had only two hospital admissions since his Whipple surgery in September 2010; prior to

---

[3] In fact, the ALJ indicated that Smith would still not be disabled even if he continued polysubstance abuse. (Tr. 18.) The ALJ stated that Smith had abused substances for years and still maintained his employment. (Id.)

[4] "The goal of the Whipple procedure (pancreatoduodenectomy) is to remove the head of the pancreas, where most tumors occur. Because the pancreas is so integrated with other organs, the surgeon must also remove the first part of small intestine (duodenum), the gallbladder, the end of the common bile duct and sometimes a portion of the stomach. In the reconstruction phase of the operation, the intestine, bile duct and remaining portion of the pancreas are reconnected." See http://www.mayoclinic.org/tests-procedures/whipple-procedure/basics/definition/prc-20021393.

[5] Smith was referred to Dr. Al-Kaade by Brenda Bush of the Grace Hill Clinic. (Tr. 1088.)

surgery, Smith had been admitted every 2 to 4 weeks. (Tr. 1088-1089.); see also Tr. 1044 (on March 31, 2011, Community Support Worker, Ms. Christy Holloway, noted that Dr. Al-Kaade explained that Smith's ER visits have decreased significantly in that he has only been to the ER two times). The CT scan of Smith's abdomen and pelvis in July 2011 at St. Louis University Hospital revealed stable postsurgical changes consistent with Whipple procedure; resolution of pneumobilia and pancreatic duct gas; no evidence of pancreatitis, pseudocysts, or paripancreatic abscess. (Tr. 17, 993-95) The ALJ pointed out that Smith's treating physicians for pancreatitis did not place restrictions consistent with a disability on him. The ALJ noted that Smith's only restriction upon being released from his hospital stays was that he should refrain from abusing alcohol. (Tr. 17.) For example, when he was discharged from St. Louis University Hospital on August 10, 2010, Smith was told he had "No restrictions to activity." (Tr. 705.) Consequently, the ALJ found that Smith has not been so limited by symptoms associated with his pancreatitis that he was precluded from working for 12 consecutive months. (Tr. 17.)

Smith's mental health also was not deemed disabling. Smith had only one psychiatric hospitalization. (Tr. 16, 18, 1022.) The ALJ considered the opinion of Kyle DeVore, Ph.D., who considered Smith's mental impairment to be non-severe. (Tr. 19, 374-84.) The ALJ noted that the medical evidence indicated that Smith's depression was adequately controlled by medication. (Tr. 18, 1092.)[6] Dr. Sicuro indicated that the regimen of Cymbalta, Abilify, and Lunesta "appeared to be effective although he continues to struggle with depression, anxiety and suicidal thoughts on a regular basis." (Tr. 1092.) The ALJ, however, discredited the opinion of Dr.

---

[6] "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995)(quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993)). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Roth v. Shalala, 45 F.3d 279, 282 (citing Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir.1989); see also 20 C.F.R. § 404.1530(a); 20 C.F.R. § 416.930(a).

13

Sicuro, who stated that "[i]t is my professional opinion that Mr. Smith is unable to work at this time." (Tr. 1092.) The record shows that Dr. Sicuro only examined Smith on February 22, 2011, and Dr. Sicuro did not recommend any modification of Smith's treatment, which would indicate that Smith's condition was stable. (Tr. 1060-61) Thus, the ALJ found that Dr. Sicuro's opinion regarding Smith's ability to work was inconsistent with the record. (Tr. 18.) See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir.2005)("[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). In addition, Dr. Sicuro was not qualified to give a vocational opinion as to total disability, as this was reserved to the Commissioner. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010)("opinions that a claimant is 'disabled or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight"). Thus, there was not substantial evidence in the medical records to support a finding of disability based upon Smith's mental health.

In addition, the ALJ considered that Smith's daily activities, which contradicted his allegations of disability. In a report submitted in April 2010, Smith stated that he needed no assistance preparing his own meals, doing laundry, and performing other household chores. (Tr. 18, 157-64.) He stated he did not need reminders to take his medicine; he can go out alone; he can shop; and he can drive. (Id.)[7] He reported that he reads a lot, keeps a journal, goes to parks and zoos; plays cards and board games. (Id.) Smith reported to the ALJ that he could only walk about a block and a half before his chest begins to hurt and he loses his breath. (Tr. 39; see also Tr. 162.) However, there are several instances in the record where Smith reports walking greater

---

[7] Smith, however, testified that he does not drive. (Tr. 39.)

distances. See, e.g., Tr. 41 (reporting at the hearing before the ALJ that he collects cans in the neighborhood), Tr. 1045 (Smith walked home from the grocery store), Tr. 1064 (Smith reported missing going for walks due to the bad weather); Tr. 1079 (Smith stated "he gets tired of being in the house all the time and needs to get out"). Smith also reported that he could "get along with most anyone." (Tr. 163.)

The ALJ also noted that Smith's credibility was questioned by his receipt of unemployment compensation until 2010, which includes the time period for which he is alleging disability. (Tr. 19, 30-31.) The ALJ properly stated that receiving unemployment benefits can be seen as inconsistent with an allegation of disability because an individual receiving unemployment benefits must be ready, willing and able to accept work. See R.S. Mo. 288.040; see also Paschal v. Astrue, 372 F. App'x 687, 688 (8th Cir. 2010).

Finally, the ALJ found that that Smith's testimony on a whole was not fully credible. For example, the ALJ found Smith was not credible, particularly with respect to his use of alcohol. The ALJ stated that Smith had "provided hopelessly conflicting statements on numerous occasions about his alcohol use." (Tr. 19.) The ALJ noted that on most of the occasions when Smith had pancreatitis flare ups, he had been using alcohol. (Tr. 17.) Although Smith has indicated that he stopped using alcohol, the ALJ noted that Smith admitted at the hearing that he still used alcohol "now and then" and had recently used marijuana. (Id.; see also Tr. 1052 (Smith "reported that he does drink beer occasionally")). The ALJ found this to be evidence that Smith was not forthcoming. (Tr. 17.)

The Court holds that the ALJ's credibility finding was supported by consideration of Smith's medical records, daily activities, inconsistent testimony, and application for unemployment insurance benefits. Paschal v. Astrue, 372 F. App'x 687, 688 (8th Cir. 2010); see

Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir.2000) (if adequately explained and supported, credibility findings are for ALJ to make). Considering the record as a whole, Smith's complaints are not supported by the substantial evidence, and the ALJ properly considered the Polaski factors in determining that Smith's subjective pain complaints were unsupported as to the extent alleged. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995). The ALJ properly found that Smith's testimony was not credible and denied his application for disability on that basis. Therefore, the Court also holds that the ALJ was not required to consider substance abuse as required by 20 CFR §404.1535 because the ALJ found Smith was not disabled, without considering his substance abuse.

**B.    Testimony of Ms. Holloway**

Smith was a client of Adapt from January 14, 2011 through at least July 13, 2011. (Tr. 1008-86.) Ms. Holloway, a community support worker, worked with Smith during this time. From the record, it appears that she transported him to appointments, facilitated his communication with physicians, and assisted him in obtaining medication.

On August 24, 2011, Ms. Holloway observed, in relevant part, that "it would be difficult for Mr. Smith to maintain any type of schedule. He has difficulty with follow-through regarding doctors' [appointments] with assistance from Community Support Specialist." (Tr. 1090.) The ALJ afforded her testimony "very little weight" because "[a]s a social worker, Ms. Holloway's opinion is not 'medical'. Therefore, any conclusions she has drawn as to claimant's limitations and/or ability to engage in sustained work activity are entitled to little weight as these are areas where she would not be expected to have expertise." (Tr. 19.)

Smith argues that the ALJ failed to properly consider the testimony of Ms. Holloway. (ECF No. 16 at 11-12.) Smith acknowledges that Ms. Holloway is not an "acceptable medical

source" as defined in 20 CFR §404.1527a(2). (ECF No. 16 at 12). Smith instead contends that Ms. Holloway was an "other source" as defined in 20 CFR §404.1513(d) because her opinion was "based on special knowledge of [Smith] and may provide insight into the severity of the impairment(s) and how it affects [Smith's] ability to function. (ECF No. 16 at 12 (citing SSR 06-03p). Smith notes that Ms. Holloway provided community support services to Smith beginning January 14, 2011 and was able to observe his level of functioning during their weekly meetings. (ECF No. 16 at 12-13.) Smith contends that Ms. Holloway observed that Smith could not maintain a schedule. (ECF No. 16 at 13.) If he could not maintain a schedule, then Smith argues that he could not sustain competitive employment based upon the testimony of the vocational expert, Ms. Gonzalez. (Id. (citing Tr. 44.)) Smith asserts that the ALJ's failure to apply the proper legal standard when evaluating Ms. Holloway's opinion was reversible error because it changed the outcome of the case. (ECF No. 16 at 13.)

The Court finds that the ALJ correctly noted that Ms. Holloway was a social worker and, therefore, her opinion was not that of a "medical source." (Tr. 19.) Further, The Court finds that the ALJ gave proper consideration to the opinion of Ms. Holloway as an "other source" under 20 CFR §404.1513(d). 20 CFR §§404.1527(c), 416.927(c) provide the rubric for analyzing a medical opinion or, if it is a non-medical, "other source" opinion, such as Ms. Holloway. For an "other source" opinion, the ALJ is instructed to measure such an opinion by the same factors: the nature and length of the doctor-patient relationship, if any; specialization; consistency; and supportability. The ALJ properly determined that Ms. Holloway's opinion was entitled to little weight, given the nature of her opinion, which attempted to supplant the Commissioner's determination of disability. The conclusions that Ms. Holloway made regarding Smith's abilities and restrictions were properly given little weight because Ms. Holloway had no expertise in

these vocational areas. (Id.) The ALJ similarly discredited the some opinions of Dr. Sicuro, who was Smith's purported treating psychiatrist, because he made a conclusory determination regarding Smith's ability to maintain employment. (Tr. 19.) See also 20 CFR §404.1527(e)(1)("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."); Chamberlain, 47 F.3d at 1494 ("The weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements.").

In addition, the ALJ found that Ms. Holloway's opinion, along with Dr. Sicuro's disability report, were inconsistent with the record, including other parts of Dr. Sicuro's own report. (Tr. 19.) Dr. Sicuro's disability report stated that Smith's medicine regimen "appear[ed] to be effective," yet he claimed that "[i]t is my professional opinion that Mr. Smith is unable to work at this time." (Tr. 1092.) "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir.2005). Similarly, the record does not support Ms. Holloway's opinions that it is difficult for Mr. Smith to maintain any type of schedule and to keep his appointments. From Ms. Holloway's records, it seems that Smith was able to keep his appointments, particularly with Ms. Holloway, and to function independently. See, generally, Tr. 1008-86. Thus, the record is inconsistent with Ms. Holloway's and Dr. Sicuro's findings that Smith was not able to work, and the ALJ properly gave these opinions little weight.

Thus, the Court finds that the ALJ properly considered and gave little weight to the testimony of Ms. Holloway related to Smith's disability claim. The ALJ was not required to give great weight to Ms. Holloway's statement that "it would be difficult for Mr. Smith to maintain any type of schedule" because such a finding was reserved to that of the Commissioner and was inconsistent with the rest of the record.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 31st day of March, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE